UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARQUETTA BRABSON-WILLIAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:21-CV-292-HAB |
| | ) |
| THE LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff was fired by Defendant after receiving several formal performance warnings over five years. Plaintiff believes that these warnings were unrelated to her firing. Instead, she asserts that she was discriminated against because of her race—she is African American—and in retaliation for her complaints about past discrimination. Defendant denies any discrimination and has moved for summary judgment. (ECF No. 14). This motion has been fully briefed (ECF Nos. 17, 18)[1] and is ripe for ruling.

**I.    Factual Background**

Plaintiff was hired by Defendant in 2008. She worked her way up the ladder and, by 2014, had been promoted to the position of Manager, Client-Customer Support and Operations. Plaintiff had almost twenty direct reports in this role, and her responsibilities included employee coaching, completing performance assessments, and overall management of her team.

---

[1] Defendant's motion for summary judgment was denied in August 2022 because Plaintiff did not sue her employer. Under *Padgett v. Norfolk S. Corp.*, Case No. 21-2488, 2022 WL 2073830 (7th Cir. June 9, 2022), a mis-named employer is a functional non-party in whose favor summary judgment cannot be granted. Plaintiff amended her complaint to name the correct employer (ECF No. 22), and the parties advised the Court that they wanted a ruling on the filed summary judgment motion on the merits. (ECF No. 24).

The parties' factual recitations focus mainly on a series of disciplinary warnings issued by Defendant beginning in 2016. The Court will do the same.

A.     *August 2016 Written Warning*

Plaintiff received a two-page written warning in August 2016. This written warning addressed "some very serious issues," including:

- Multiple individuals reported that Plaintiff used the "f-word" "with subordinates in a manner to express anger or frustration." It was reported that Plaintiff —— stated, "I am pissed the fuck off. I have bever been so fucking pissed since I have worked here. We shouldn't be even offering this product anyway." Plaintiff denies ever using inappropriate language.

- Plaintiff was contacted by another manager who was interested in hiring one of Plaintiff's subordinates. Plaintiff claimed that the employee was "one of [her] best employees [and] was in line for a promotion this year." In fact, Plaintiff planned to give the employee a disciplinary warning related to her performance. It was claimed that Plaintiff was trying to pass one of her problem employees off to another manager. Plaintiff denies misleading the other manager, stating that, while she praised the subordinate's attendance and attitude, she advised that the subordinate's quality of work was "not very good."

- Multiple subordinates claimed that Plaintiff made demeaning statements to them, including that they didn't "know how to handle stress" and that their job wasn't "delivering babies [or] brain surgery."

- On a day in June 2016, Plaintiff had 58 director items outstanding in her queue despite a stated goal of zero such items. Plaintiff blamed the fact that one of her

>   subordinates was having computer issues, but Plaintiff made no attempt to obtain a replacement computer for the employee because she "didn't think of that."

(ECF No. 17-1 at 68–69). The written warning was in effect for ninety days. The written warning advised that, if Plaintiff failed to "demonstrate immediate and sustained improvement" during the warning period she faced further disciplinary action, including termination. Plaintiff was also advised that, should her "performance fall[] below acceptable in any area in the 12 months following" the warning period, she could be terminated.

**B.**     *October 2017 Formal Verbal Warning*

Plaintiff received a formal verbal warning, memorialized in a two-page document, in October 2017. The verbal warning addressed:

- An incident where Plaintiff forwarded "formal counseling documentation," which Defendant considered confidential employee information, of one employee to another. Plaintiff responds that "it depends on how you look at it," but, ultimately, she denies this allegation stating, "I did not send confidential employee information—I only sent [sic] with information explaining the process not the specific employee."
- Repeated incidents where Plaintiff was late, or failed to appear, for meetings. Plaintiff does not deny that these events occurred but attributed her tardiness to the time necessary to travel from one meeting to another. She also claims that, when she missed a meeting, she always assigned a replacement to attend or presented a valid excuse for her lack of attendance.

(ECF No. 17-1 at 54–55). The verbal warning remained in effect for sixty days. During that period, Plaintiff had bi-weekly discussions about her performance. The verbal warning advised that if

3

Plaintiff failed "to demonstrate immediate and sustained improvement" she would be subject to new discipline, including termination. The verbal warning also warned that, should Plaintiff's performance "fall below satisfactory during the next 12 months," she could be terminated.

**C.**     *August 2019 Formal Counseling*

Plaintiff received formal counseling in August 2019, again memorialized in a two-page document. This counseling occurred after Plaintiff's performance did not improve despite "a number of discussions regarding areas where [her] performance [was] not meeting expectations." The counseling addressed two issues:

- Plaintiff's continued failure to appear on time for meetings. Plaintiff asserts, again, that when she would be late or miss a meeting she would provide warning.
- Plaintiff's failure to complete and submit documents related to her ongoing performance improvement.

(ECF No. 17-1 at 56–57). Plaintiff largely agrees that she was counseled on these issues, but denies that they point to her failing to meet expectations.

As a result of the formal counseling, Plaintiff was placed on a performance improvement plan ("PIP"). The PIP required her to "be early or on time for meetings" and "execute tasks in a timely manner, meeting deliverables." The PIP was to remain in effect for thirty days. Just like the other warnings, Plaintiff was advised that if her performance fell during the PIP or the twelve months thereafter, she faced new discipline, including termination.

**D.**     *October 2019 Formal Verbal Warning*

Less than two months later, Defendant determined that, despite the August 2019 formal counseling, Plaintiff's "performance remain[ed] unsatisfactory." A formal verbal warning was issued as a result, again memorialized in a two-page document. The verbal warning addressed:

- Plaintiff's continued failure to arrive on time for meetings. Plaintiff effectively concedes this point but excuses her failure to arrive on time for 8:30 a.m. meetings because that was her self-selected arrival time to the office.
- A privacy incident that Plaintiff failed to report within the required timeframe. Plaintiff blames this on a subordinate who failed to complete a reporting document properly.
- Plaintiff's failure to complete a "goal tracker spreadsheet" on time.

The verbal warning remained in effect for sixty days. Again, if Plaintiff's performance fell during the verbal warning, or in the twelve months thereafter, she was subject to new discipline including termination.

E.   *January 2020 Meeting*

In January 2020, Plaintiff requested and received a meeting with Nikki Looney ("Looney"), an HR representative for Defendant. Looney prepared a three-page, single-spaced summary of the meeting, and provided the summary to Plaintiff so that she could make any corrections or additions. (ECF No. 17-1 at 65–67). Both women made many notes in the margins explaining the meeting. The Court will address the specifics of this meeting as they become relevant below.

F.   *February 2020 Termination*

One month after the meeting, Plaintiff was involved in an incident that Defendant claims was the final straw. A position came open with Defendant and two current employees, a husband and wife, both applied. Plaintiff was informed by another manager, Jennifer Martin ("Martin"), which of the two got the job. But Martin wanted to talk to the husband and wife before the hiring announcement was made, so Plaintiff was asked to keep the information secret. According to

Plaintiff, Martin asked her to keep the announcement secret until Martin gave "the green light" for the announcement.

Minutes after this conversation between Plaintiff and Martin, Plaintiff met with employees where the wife was present. Part of this meeting was to announce open roles within the company because Defendant had a standing policy of allowing current employees to apply for open positions before non-employees. As Plaintiff was discussing open positions, she claims that Martin began nodding. Plaintiff took this as the "green light," so she announced as an open position the position that was being vacated by the husband or wife, whichever one got the applied-for job. This was a giveaway as to which of the two was the successful applicant. Martin had to step in to stop Plaintiff from commenting further.

Following the meeting, Martin met with Looney and Felicia Cooper ("Cooper"), Defendant's Assistant Vice President for Employee Relations. The three discussed Plaintiff's disclosure of the open position, as well as Plaintiff's performance issues since the October 2019 verbal warning. The three unanimously decided that Plaintiff should be fired, with Plaintiff informed of her termination shortly thereafter.

## II.     Legal Discussion

### A.     *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't*

*of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**     ***Plaintiff Cannot Establish Race Discrimination***

Plaintiff first asserts that Defendant violated Title VII by discriminating against her because of her race. Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); *Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a

7

plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). Plaintiff has chosen to proceed under the *McDonnell Douglas* framework. Still, in all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action). *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Under the burden shifting methodology, Plaintiff must first establish several prima facie elements of discrimination. To successfully set forth a prima facie case of racial discrimination, Plaintiff must show that: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate performance expectations; 3) she suffered an adverse employment action; and 4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

If Plaintiff establishes a prima facie case, the burden of production shifts to Defendant to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id.* If Defendant

meets this burden, Plaintiff must show that Defendant's purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 143 "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id*. (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The parties hotly contest the second element of the prima facie case, but the Court finds that the discrimination case is easily disposed of under the fourth. Put simply, Plaintiff's briefing on the issue of comparators is . . . odd. Her brief lifts Defendant's argument from its brief nearly word-for-word, albeit plus typos. (*Cf.* ECF No. 15 at 13; ECF No. 17 at 13). She doesn't even change the negative verbs to positive ones; her brief states that her comparator evidence "is insufficient to support here [sic] position," and that her testimony "demonstrates that these individuals do not provide evidence of discrimination." (ECF No. 17 at 13). Plaintiff, then, has completely failed to respond to Defendant's argument that she has not pointed to similarly situated employees. When a nonmovant fails to respond to a movant's summary judgment argument, any such response is found waived. *C&N Corp. v. Gregory Kane & Ill. River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014). Plaintiff's lack of response will be seen as an admission that there are no similarly situated employees who were not members of the protected class that were treated more favorably. *See Hartford Underwriters Ins. Co. v. Worldwide Transp. Shipping Co.*, 313 F. Supp. 3d 919, 925 (N.D. Ill. 2018).

Even if Plaintiff could show a prima facie case of discrimination, the Court finds that Defendant has identified a non-pretextual basis for termination. Pretext means "a fabrication, designed to conceal an unlawful reason"; it is "something worse than a business error," where "deceit [is] used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681,

9

684 (7th Cir. 2000) (citation omitted). To show pretext, Plaintiff can present evidence showing that: (1) Defendant was "more likely than not motivated by a discriminatory reason"; or (2) Defendant's stated reason is not credible. *Alexander v. Wis. Dep't of Fam. Servs.*, 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). When considering pretext at the summary judgment stage, "the only question before [the Court] is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies." *Alexander*, 263 F.3d at 683. "In determining whether the employer's reason can be characterized as pretextual, we do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020); *see also Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness.").

Defendant points to Plaintiff's long history of formal disciplinary write ups, going back to 2016, as the basis for her termination. (ECF Np. 15 at 17). Again, Plaintiff fails to respond. Aside from a long string cite and many parentheticals, Plaintiff's response on pretext reads: "The Seventh Circuit has made it clear that in employment discrimination cases, the court does 'not act as a 'superpersonnel department.''" (ECF No. 17 at 19). This statement is true, but it's hard to see how it helps Plaintiff. It's not an argument showing, or trying to show, that Defendant's proffered reason for termination was pretext. The Court again finds that Plaintiff has failed to respond to Defendant's summary judgment arguments and has waived any response.

But let's assume, for a second, that Plaintiff's briefing did not waive the issue. In her Statement of Genuine Issues (ECF No. 17-1), Plaintiff appears to argue that Defendant cannot rely on her past discipline because it is too remote in time. (*Id*. at 19). On this point Plaintiff confuses concepts. Plaintiff cites *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906 (7th Cir. 2002). There, the Seventh Circuit was discussing temporal relationship in the context of direct evidence of discrimination. *Id*. at 910 ("Moreover, the statements were claimed to have been made between November 1998 and March 1999, and Markel was removed from her position nearly two months later in May 1999. Therefore, these statements were not made contemporaneously to the adverse employment action as required by our case law."). Providing direct evidence of discrimination is different in kind and quality than showing pretext. Without some argument or relevant authority that the Court cannot consider temporally remote discipline in the pretext analysis, the Court will not venture down that path.

This is not to say that the Court is entirely unsympathetic to Plaintiff's remoteness argument. By the time of Plaintiff's termination, the disciplinary write ups from 2016 to 2017 had expired by their terms. Each stated that new discipline could flow from those write ups only if it occurred within twelve months. By February 2020, then, Defendant had lost the ability to rely on these instances of discipline.

That's cold comfort for Plaintiff, however. Defendant still has the August and October 2019 disciplinary write ups, as well as the February 2020 incident. Plaintiff may disagree as to whether discipline in those cases was warranted, but her opinion is largely irrelevant. *See Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006) ("Luks' own opinion that he was doing the job satisfactorily is beside the point. His assertions as to purely factual matters within his personal knowledge might establish questions of fact on those points, but the relevant question

is not whether the criticisms of his performance were right or wrong but whether his supervisor honestly believed them.") (citations omitted). Plaintiff has presented no evidence questioning Defendant's veracity when it points to her repeated disciplinary incidents as the cause of her termination. She has failed to rebut the assertion of non-pretextual reason for her termination, and summary judgment on her discrimination claim is appropriate.

**C.    *Plaintiff Cannot Show Retaliation***

Aside from her discrimination claim, Plaintiff has also brought a claim for retaliation. In pursuing such a claim under Title VII, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The same burden-shifting under *McDonnell Douglas* that applies to the discrimination case also applies to Plaintiff's retaliation claim. *Miller v. American Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000).

Most of the parties' attention is paid to the first element. The Court, however, finds that Plaintiff's retaliation claim fails for much the same reason as her discrimination claim. Defendant can point to three instances of discipline within a seven-month span. There is no evidence that Defendant's reliance on these instances was pretextual, or that any protected activity, if it occurred, was the cause of her termination. Summary judgment is appropriate on the retaliation claim as well.

**III.    Conclusion**

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is GRANTED. The Clerk is DIRECTED to enter judgment for Defendant and against Plaintiff.

SO ORDERED on January 31, 2023.

                                             s/ *Holly A. Brady*
                                             JUDGE HOLLY A. BRADY
                                             UNITED STATES DISTRICT COURT